OPINION
{¶ 1} Catherine Humphrey raised eight children on a farm. While hospitalized for a stroke, one of her sons, appellant, David Humphrey, a lawyer, created a trust on January 8, 2000, the Humphrey Family Revocable Trust, naming himself and his sister, appellant, Mary Hillis, as trustees. A portion of Catherine's assets was placed into the trust. On January 17, 2000, Catherine executed a document revoking the trust, and signed a deed granting a portion of her real estate to three of her children, appellees, Leo (Gene) Humphrey, Rita Humphrey and Roger Humphrey. On March 9, 2000, Catherine executed a new will. Helping Catherine with the documents was her attorney, James Ransbottom.
 {¶ 2} Catherine passed away on December 18, 2001. Appellants, together with another sibling and the children of two deceased siblings, filed three actions in probate court against appellees. The three actions were a will contest, a declaratory judgment action to recover lifetime transfers and a declaratory judgment action concerning the aforementioned trust.
 {¶ 3} A trial commenced on November 24, 2003. By judgment entry filed April 1, 2004, the trial court upheld the March 9, 2000 will, found Catherine properly revoked the Humphrey Family Revocable Trust, found the deed executed by Catherine to be valid, and found an inter vivos transfer of stock by Catherine to Rita to be proper. The trial court also reviewed numerous documents transferring Catherine's various assets to appellees Rita and Roger, and ordered several of the transferred assets returned to the estate. A final order was filed on February 7, 2005.
 {¶ 4} APPELLANTS FILED AN APPEAL AND ASSIGNED THE FOLLOWING ERRORS:
 I {¶ 5} "THE TRIAL COURT ERRED IN FINDING THE MARCH 9, 2000 WILL VALID AS SUCH FINDING IS AGAINST THE WEIGHT OF THE EVIDENCE."
 II {¶ 6} "THE TRIAL COURT ERRED BY GROSSLY MISSTATING THE FACTS."
 III {¶ 7} "THE TRIAL COURT ERRED IN FINDING THE DEED AND TRUST REVOCATION DATED JANUARY 17, 2000 TO BE VALID."
 IV {¶ 8} "THE TRIAL COURT ERRED IN FINDING THAT THE TRANSFER OF 3,412 SHARES OF NATIONAL CITY BANK STOCK WAS VALID."
 V {¶ 9} "THE TRIAL COURT ERRED IN NOT AWARDING THE ESTATE THE FUNDS TAKEN FOR TUITION."
 VI {¶ 10} "THE TRIAL COURT ERRED IN NOT AWARDING THE ESTATE THE INTEREST TAKEN FROM ACCOUNTS 1649192300 AND 1652050407 HELD IN TRUST AT NATIONAL CITY BANK."
 VII {¶ 11} "THE TRIAL COURT ERRED BY NOT AWARDING THE ESTATE $1,956 TAKEN BY RITA BY FORGERY ON MAY 28, 1999."
 VIII {¶ 12} "THE TRIAL COURT ERRED IN NOT AWARDING PLAINTIFFS A COMPLETE ACCOUNTING RELATED TO THE EARNINGS ON ALL INTER VIVOS TRANSFERS AND SURVIVORSHIP ACCOUNTS AWARDED TO THE ESTATE."
 {¶ 13} Appellees filed a cross-appeal and assigned the following error:
 CROSS-ASSIGNMENT OF ERROR I {¶ 14} "THE TRIAL COURT ERRED IN REQUIRING THE DEFENDANTS TO PAY ANY ASSETS TO THE ESTATE."
 {¶ 15} This matter is now before this court for consideration.
 I, II, III, IV, V, VII {¶ 16} These assignments of error challenge the trial court's decision as being against the manifest weight of the evidence. Specifically, appellants claim the trial court erred in determining Catherine had testamentary capacity and was competent on March 9, 2000 when she executed her will, Catherine's revocation of the Humphrey Family Revocable Trust was valid and Catherine's inter vivos stock transfer to Rita was proper. Appellants also claim the trial court erred in not awarding the estate funds taken for school tuition for appellee Roger's children and $1,956.00 taken by appellee Rita by forgery. We disagree with these claims for the following reasons.
 {¶ 17} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v.Garson, 66 Ohio St.3d 610, 1993-Ohio-9.
 {¶ 18} At the outset, it is important to note the trial court was troubled by appellants' failure to present the appropriate witnesses:
 {¶ 19} "The plaintiffs called several witnesses that testified as to the relationship of this family. Unfortunately, the plaintiffs' attorneys failed to call Roger Humphrey to testify as on cross. The Court has always felt that the plaintiff/attorney David Humphrey was too close and too emotionally involved in this case. While he presented a very good case, the court feels that the emotional connection affected his judgment in the calling of witnesses to support his case. As a result, key witnesses in this case were never called to the stand to testify." Judgment Entry filed April 1, 2004.
 {¶ 20} In order to review the evidence in the proper perspective, it is important to note that when appellant David used a 1992 power of attorney to establish the "family trust," a power of attorney granted by Catherine to appellant Mary, he in fact precipitated the transfer of real estate and stock to appellees. T. at 131-132, 146. No matter how much appellant David protests the establishment of the trust was for Catherine's protection, it clearly was done after appellee Roger claimed he was entitled to back compensation for managing the farm for thirty years. T. at 108. Appellant David's testimony is fraught with emotion, mistrust and self-dealing and as pointed out by the trial court, missed the mark.
 {¶ 21} The first issue is whether Catherine was competent when she revoked the Humphrey Family Revocable Trust on January 17, 2000 and when she executed her will on March 9, 2000. We answer this in the affirmative.
 {¶ 22} Several medical experts testified in this case. Mukesh Rangwani, M.D., a psychiatrist, evaluated Catherine first on January 7, 2000, in the presence of her daughter and then alone on March 9, 2000, the day of the signing of the will. Rangwani depo. at 10, 18, 59, 63. Catherine understood who she lived with and who cared for her, and she was upset over the fact that her children were fighting over her property. Id. at 8. In a consultation — psychiatric report dated January 7, 2000, Dr. Rangwani stated Catherine was "alert and oriented x3," her memory was intact, "including simple calculations," and her judgment was good. Plaintiff's Exhibit 212. In his psychiatric evaluation dated March 9, 2000, Dr. Rangwani stated Catherine was "coherent, logical and goal directed," her memory was intact in all areas and she had good concentration. Plaintiff's Exhibit 178. Dr. Rangwani opined Catherine was competent. Id. at 32-33, 59, 63-66. He believed he did not have a problem communicating with her. Id. at 24.
 {¶ 23} Bradley Wilson, D.O., treated Catherine for a stroke and discharged her on May 5, 1999. Wilson depo. at 10. Dr. Wilson stated it can take six months to one year for an individual to recover from a stroke. Id. at 11. Dr. Wilson treated Catherine for a stroke again and discharged her on January 10, 2000. Id. at 12. Dr. Wilson stated although Catherine's verbal and motor skills were improving, she had a "decline in her general cognitive function." Id. at 14. Dr. Wilson opined Catherine was not confused or disoriented, but was having difficulty expressing herself, a condition known as expressive aphasia. Id. at 17-18. On cross-examination, Dr. Wilson acknowledged Catherine's condition prevented her from expressing herself, but did not prevent her from formulating thoughts and ideas, and did not necessarily affect her intelligence or decision making. Id. at 64-65.
 {¶ 24} John Feerick, M.D., a neurologist, evaluated Catherine on January 3, 2000 and opined although she did follow some simple commands and had some verbal output, her ability to express and understand was impaired. Feerick depo. at 10. She was not capable of decision making. Id. at 59. Dr. Feerick stated he believed her expressive aphasia to be permanent. Id. at 38-39. He unequivocally stated Catherine could not have understood the deed she signed on January 17, 2000. Id. at 61. Dr. Feerick opined Dr. Rangwani's assessment of Catherine bore "no resemblance to the patient" he examined. Id. at 46.
 {¶ 25} A discharge summary by Paul Mumma, D.O. dated January 10, 2000 indicates Catherine compensated very well for her chronic aphasia with "hand signals and her partial verbal function." Plaintiff's Exhibit 200.
 {¶ 26} Although Drs. Rangwani, Wilson and Feerick all wanted further evaluations, none were done prior to her death. The trial court was faced with contradictory expert testimony and as the trier of fact, was in the best position to evaluate the testimony. State v. DeHass (1967),10 Ohio St.2d 230. Although the trial court's decision does not speak to the three expert depositions filed, the trial court noted the depositions and attached exhibits "would be viewed by the Court on the week-end prior to the date set for this trial and that those items would therefore be made a part of the trial transcript." Judgment Entry filed April 1, 2004. We can only assume that given the conflicting nature of the depositions, the trial court considered them for naught. Instead, the trial court based its ruling on the testimony of the various lay witnesses and attorneys.
 {¶ 27} Catherine's attorney, James Ransbottom, testified he met with Catherine on December 31, 1999 prior to her second stroke. She expressed her desire to change her power of attorney and revoke the current power of attorney to Mary. T. at 590. She also wanted to deed a portion of her property to appellees. T. at 596. Mr. Ransbottom indicated Catherine was able to communicate her thoughts and was able to understand what he was telling her. T. at 591.
 {¶ 28} Mr. Ransbottom prepared the necessary documents for the power of attorney and met with Catherine again on January 10, 2000. T. at 592. He personally observed Catherine sign the revocation and the new power of attorney to appellees Rita and Roger. T. at 594-595; Defendant's Exhibits 1 and 23. Mr. Ransbottom opined Catherine was competent. T. at 596.
 {¶ 29} On January 17, 2000, Catherine signed the deed prepared by Mr. Ransbottom as she had requested. T. at 597; Defendant's Exhibit 5. Mr. Ransbottom prepared a letter and made sure Catherine was aware of what property the deed covered and what the deed would do. T. at 603-604; Defendant's Exhibit 6. Also, Catherine signed the revocation of the Humphrey Family Revocable Trust. T. at 598; Defendant's Exhibit 3. Mr. Ransbottom testified Catherine was very mad about the fact that some of her assets had been moved into the trust and she was "mad most specifically at David." T. at 600-601. She viewed the moving of the money as a "money grab." T. at 606. Mr. Ransbottom opined Catherine was competent to sign both documents. T. at 597, 599.
 {¶ 30} On February 7, 2000, Mr. Ransbottom visited Catherine in her home to observe her living conditions as appellant David had alleged to Mr. Ransbottom that his mother was not being taken care of. T. at 614-615, 617. Mr. Ransbottom found the home to be very nice, warm and immaculate, and Catherine appeared to be comfortable there. T. at 617-618. They had a private discussion about her monies and what she wanted and Catherine expressed a desire to write a new will. T. at 618-620, 623. Catherine presented an outline of what she wanted which Mr. Ransbottom reviewed with her. T. at 623-624. Mr. Ransbottom was satisfied that she understood and agreed to the changes. T. at 624.
 {¶ 31} On March 9, 2000, after meeting with Dr. Rangwani, Catherine met with Mr. Ransbottom and two of his staff members, reviewed the new will and reviewed the will a second time with appellees Rita and Roger present. T. at 625-629; Defendant's Exhibit 21. Mr. Ransbottom opined there was not any question in his mind that Catherine was competent to sign the new will. T. at 627.
 {¶ 32} Upon review, we find sufficient, credible evidence to support the trial court's conclusion that Catherine was competent on January 17, 2000 and March 9, 2000, and the will, trust revocation and deed were valid.
 {¶ 33} Another issue is whether the transfer of National City Bank stock to appellee Rita was valid. We conclude that it was. Catherine and appellee Rita were joint survivors on the stock since 1972. T. at 144-145. Further, the will referenced this transfer. Mr. Ransbottom testified it was Catherine's wish to transfer the stock to appellee Rita as Catherine was very concerned about appellee Rita's well-being. T. at 632. There was clear proof that appellee Rita had taken care of the household chores for years and during her mother's illness, had assumed the role of caregiver. Most of the time, appellee Rita was uncompensated and appellant David acknowledged she was deserving of compensation. T. at 57-60.
 {¶ 34} Upon review, we find sufficient, credible evidence to support the trial court's decision regarding the National City Bank stock.
 {¶ 35} The next issue surrounds reimbursement to the estate. Appellants argue the trial court should have awarded the estate funds taken for school tuition for appellee Roger's children and $1,956.00 taken by appellee Rita by forgery.
 {¶ 36} Appellants argue the tuition payments could not have been Catherine's wish because she had never covered tuition payments for her other grandchildren. T. at 150-151. Appellee Roger never testified on direct or cross therefore, as the trial court noted, the issue remains unproven.
 {¶ 37} Appellants argue appellee Rita forged a check for $1,956.00 dated May 28, 1999. Although appellants argue forgery, the assignment of error does not reference a place in the transcript to support this allegation. Pursuant to App.R. 16(A)(3), an appellant's brief shall include a statement of the assignments of error "with reference to the place in the record where each error is reflected."
 {¶ 38} Upon review, we find the trial court was correct in not awarding the estate funds for the tuition and the "forged" check.
 {¶ 39} Assignments of Error I, II, III, IV, V and VII are denied.
 VI {¶ 40} Appellants claim the trial court erred in not ordering appellees to reimburse the estate for interest on monies the trial court found had been wrongfully taken. We agree in part.
 {¶ 41} The evidence established the funds were held in various joint accounts and then cashed by appellees. Any certificates of deposit included the interest when they were cashed out, but interest from the date of receipt follows any funds directly paid to appellees.
 {¶ 42} Assignment of Error VI is granted in part and the matter is remanded to the trial court for computation of interest not included in the trial court entry.
 VIII {¶ 43} Appellants claim the trial court erred in not requiring an accounting. We disagree.
 {¶ 44} By sustaining the trial court's findings on the will, power of attorney, trust revocation and deed, we find an accounting would not be required. The trial court's decision of no wrongdoing except for some timber money negates the justification of an accounting.
 {¶ 45} Assignment of Error VIII is denied.
 CROSS-ASSIGNMENT OF ERROR I {¶ 46} Appellees claim the order for the return of certain funds was inconsistent with the trial court's decision on testamentary capacity. We disagree.
 {¶ 47} The funds ordered returned to the estate were from transactions that occurred prior to the writing of the new will. These funds included monies for timber on Catherine's real estate which had been deposited into her accounts. T. at 74-84. The funds were not used for Catherine's care or maintenance, but were taken from the accounts. Appellee Rita admitted to appellant David the monies should be given back. T. at 120. These funds were separate and distinct from any items in the new will and previous to any of the new documents.
 {¶ 48} Upon review, we find the trial court's decision was consistent and supported by the evidence.
 {¶ 49} Cross-Assignment of Error I is denied.
 {¶ 50} The judgment of the Court of Common Pleas of Perry County, Ohio is hereby affirmed in part and reversed in part.
Farmer, P.J. Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Perry County, Ohio is affirmed in part, reversed in part and the matter is remanded to said court for further proceedings consistent with this opinion. Costs to appellants.